IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO.:

VIBE MICRO, INC., a Nevada Corporation,
derivatively on behalf of 8 SPEED 8, INC.,
a foreign corporation and EDWARD MANDEL,
an individual,

       Plaintiffs,

vs.

IGOR SHABANETS, an individual,
SIG CAPITAL, INC., a Florida corporation,
RAIN KIOSK, INC., a foreign corporation,
KARLA GUARINO, an individual,
THOMAS B. PARKER, an individual, ISS
MANAGEMENT, LLC, a Nevada limited liability
company, TBP MANAGEMENT GROUP, LLC,
a Nevada limited liability company, PAYTELLER,
LLC, a Florida limited liability company, JEFF
FOSTER, an individual, YVES YON, an
individual, SNELL & WILMER, LLP,  a foreign
limited liability partnership, CARDPLATFORMS, LLC
a Florida limited liability company, PAYTELLER
COMPLIANCE, LLC, a foreign limited liability company
d/b/a JANEFOUR20; KIOSK CONSULTING, LLC, a
foreign limited liability company, BIG CAPITAL, LLC, a
foreign limited liability company, MICHAEL PARK, an
individual, MICHAEL G. PARK, P.A., a Florida corporation
and D2P VENTURES, LLC, a Florida limited liability company,

       Defendants.

_____/

## **COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

     Plaintiffs Edward Mandel, an individual and VIBE MICRO, INC., a Nevada corporation,

as shareholder of 8 Speed 8, Inc., a Nevada corporation, brings direct and derivative actions on

behalf of 8 Speed 8 against IGOR SHABANETS, an individual ("Shabanets"), SIG CAPITAL,

INC., a Florida corporation ("SIG Capital"), RAIN KIOSK, INC., a foreign corporation ("Rain

Kiosk"); KARLA GUARINO, an individual ("Guarino"); THOMAS B. PARKER, an individual

("Parker"); ISS MANAGEMENT, LLC , a Nevada limited liability company ("ISS

Management"), TBP MANAGEMENT GROUP, LLC, a Nevada limited liability company ("TBP

Management"); PAYTELLER, LLC, a Florida limited liability company ("Payteller"), Jeff Foster

("Foster"); YEVES YON, an individual ("Yon"), CARDPLATFORMS, LLC, a Florida limited

liability company ("CardPlatforms"), KIOSK CONSULTING, LLC, a Foreign limited liability

company ("Kiosk Consulting") SNELL & WILMER, LLP, a foreign limited liability partnership

("The Law Firm"), PAYTELLER COMPLIANCE, LLC, a foreign limited liability company d/b/a

JANEFOUR20 ("Payteller Compliance"); BIG CAPITAL, LLC, a foreign limited liability

company ("Big Capital"), MICHAEL PARK, an individual ("Payteller Attorney"), MICAHEL G.

PARK, P.A., a Florida corporation ("Park Law Firm"); and D2P VENTURES, LLC, a Florida

limited liability company ("D2P Ventures") for various statutory, legal, contractual, and tortious

causes of action for damages for racketeering activity, corporate fraud, bankruptcy fraud, wrongful

incarceration and for aiding and abetting the fraud and racketeering activity as follows.

## <u>INTRODUCTION</u>

1.      This is an action engaged in by certain individuals that were formerly affiliated with

the Plaintiff, Edward Mandel and the company that he controlled, Vibe Micro.  These individuals

breached contractual commitments and refused to provide either wages or shares of stock in

consideration for the services that Edward Mandel and his wife, Irene Mandel provided to the

company.  This will be discussed, below, as **The HUC Transaction**.  Rather than paying Edward

Mandel and his wife for the services that were performed in The HUC Transaction, one of the

defendants regarding this issue, Shabanets, intentionally stopped payments on a series of checks

for services that were performed by Edward Mandel and Irene Mandel and/or for the repayment

of loans that were provided to the company by Samuel Mandel.  These same assortment of individuals, or Sorsher, Worborboff, SIG Capital and Shabanets, knew that Edward Mandel was making payments from his own personal bank account for a company vehicle.  Rather than simply telephone Edward Mandel and request that the vehicle be returned to their possession after they terminated Edward Mandel and his wife, Irene Mandel, these defendants telephoned the Hollywood Police Department to report that the vehicle was stolen.  These individuals knew that the vehicle was not stolen but they engaged in this conduct anyway in order to mentally and physically exhaust Edward Mandel and Irene Mandel from contesting the defendants conduct in either The HUC Transaction or the next transaction, or The 8 Speed 8 Transaction.

2.      The HUC Transaction is the subject of a pending state court litigation; the action is more particularly described as follows: *In The Circuit Court of the 17th Judicial Circuit In And For Broward County, Florida; Complex Business Litigation Division, Case No.:* 14-007971 CACE 03 (hereinafter "The State Court Litigation").

3.      Some of the individuals who were engaged in the conduct, above, or the HUC Transaction, were also affiliated with Edward Mandel and the corporate entity that he controlled, or Vibe Micro, in 8 Speed 8.  This includes, most notably, SIG Capital and Shabanets.  8 Speed 8 is a Nevada corporation that had three corporate shareholders and a number of officers and directors.  It is a company that was designed to perform services in the payment terminal business.  One of the shareholders of 8 Speed 8, or SIG Capital, was required to provide the company with capital for ordinary business operations associated with the development of the kiosks and the marketing of those kiosks to third party clientele.  8 Speed 8 had real and present business opportunities.  Those opportunities included, without limitation, the installation of over 8000 kiosks in 7-Eleven Stores and other convenience stores in a 24 month timeframe.  This required

funding.  SIG Capital and Shabanets agreed, as per the 8 Speed 8 Shareholder Agreement, to provide such funding.  Instead of providing the agreed upon capital contribution, SIG Capital and Shabanets made it clear that they would not be doing so and, instead, wanted outside investors to provide 8 Speed 8 with the capital contributions.  Mandel and Vibe Micro opposed such position. The other shareholders of 8 Speed 8, including the officers and directors, agreed with SIG Capital. This rendered Vibe Miro as a minority shareholder.   However, SIG Capital could not, by agreement, vote as its shares were not vested at the time of the occurrence.  While 8 Speed 8 was legally deadlocked due to the split between the two corporate shareholders that did have voting rights, those interested parties, or Shabanets and  Guarino, and Mark Okhman, an individual ("Okhman")[1] (hereinafter "**8 Speed 8 corporate insiders**"), made decisions that were contrary to the voting provisions in the 8 Speed 8 Shareholder Agreement.  Namely, they decided among themselves to call a special meeting and essentially ratify SIG Capital's decision to forego further 8 Speed 8 funding.  Mandel and Vibe Micro were not in attendance for this meeting.  They could not be. Edward Mandel was in jail arising from the wrongful arrested associated with the company vehicle on The HUC Transaction.

4.     Edward Mandel had, however, retained counsel, Dexter Lehtinen, of the Tew Cardenas law firm.  A demand letter was sent at that time.  This serves as Vibe Micro's condition precedent to maintaining a derivative claim on behalf of 8 Speed 8 against 8 Speed 8 and the 8 Speed 8 corporate insiders who engaged in such conduct.  The shareholder derivative claim sounds in breach of fiduciary duty, common law fraud, civil conspiracy and violation of the RICO statute, or 18 USCA §1962, et.al.   The demand letter called for the arbitrator designed in the 8 Speed 8 Shareholder Agreement, or Sol Saad, to immediately intervene.  While the 8 Speed 8 corporate

---

[1] The Plaintiffs have resolved those claims that exist between the Plaintiffs and Okhman and his corporate entities.

insiders were not permitted to act at that time as the 8 Speed 8 Shareholder Agreement only provided voting rights to Vibe Micro and Luxor Entertainment, the 8 Speed 8 corporate insiders decided among themselves to SIG Capital and Shabanets file an involuntary bankruptcy action against 8 Speed 8.  This was a bad faith filing.  It is evidenced by the record evidence obtained during those proceedings that the involuntary bankruptcy litigation was filed for reasons such as "to get Ed [Mandel] out of the picture" and for SIG Capital to get its money back from the capital contributions provided to 8 Speed 8.  It was later discovered that, at the time of the bankruptcy filing, 8 Speed 8 had assets that were worth close to Three Hundred Thousand Dollars ($300,000.00) and that the 8 Speed 8 corporate insiders motive in filing the Bad Faith Involuntary Bankruptcy Litigation was to "*buy the assets after the bankruptcy was discharged.*"  All of which is proof of the bad faith filing.[2]   Mandel and Vibe Micro's demand letter requested, in part, immediate arbitration.  It followed the dispute resolution provision of the 8 Speed 8 Shareholder Agreement.  The 8 Speed 8 corporate insiders filed the involuntary bankruptcy litigation anyway. It was filed in bad faith. This bad faith filing was determined by the Court to be just that, or one that was filed in bad faith.  It is hereinafter referred to as the "**Bad Faith Involuntary Bankruptcy Litigation."**

5. Discovery ensued.  The bankruptcy court orally indicated that the 8 Speed 8 corporate insiders that had initiated the Bad Faith Involuntary Bankruptcy Litigation could be subject to sanctions for filing the bankruptcy petition against 8 Speed 8 in bad faith.  During this time, the 8 Speed 8 corporate insiders were negotiating with a competitor company of 8 Speed 8, or Payteller.  It was represented to Payteller and its controlling persons that the 8 Speed 8 corporate

---

[2] In re Better Care, Ltd., 97 BR 405 (Bankr. N.D. Ill. 1989) (improper use of Bankruptcy Code justifying finding of bad faith will exist any time the creditor uses the involuntary bankruptcy to obtain disproportionate advantage to that creditor's positon, rather than to protect against other creditors obtaining disproportionate advantage; this is especially true where petitioning creditor could have obtained that advantage in alternate forum).

insiders could provide Payteller with funding through an outside source. Payteller, however, required the funding commitment by a date certain, or during the month of July, 2014. During that time, however, the 8 Speed 8 corporate insiders knew that the Bankruptcy Court viewed the bankruptcy litigation as a potential bad faith bankruptcy filing. Rather than disclose the information to the Court, the 8 Speed 8 corporate insiders engaged in bankruptcy fraud. They refused to disclose the nature of the transaction with Payteller. The Law Firm was representing the 8 Speed 8 corporate insiders during the bankruptcy proceedings. Payteller Attorney and Park Law Firm were representing Payteller. Moreover, one of the officers and directors of Payteller, Karla Guarino, accepted employment with Payteller. Payteller retained Ms. Guarino at the insistence of one of the 8 Speed 8 corporate insiders, or Okhman. The transaction closed. The terms provided, in part, that the 8 Speed 8 corporate insiders—through a third party corporation that they controlled—provided 25 million dollars in funding commitments to Payteller. It further provides that 10 million of the 25 million in funding would be provided on the closing date and was, in fact, provided at or around that time.

6.     Okhman provided a sworn statement in the Southern District of Florida as a condition of the Okhman Settlement Agreement. During that time, it was learned that the 10 million dollars in funding came directly from a third party Russian corporate entity at the recommendation of the 8 Speed 8 corporate insiders. The money was sent from the Russian corporate entity directly into the Payteller account in the Southern District of Florida. In consideration, the 8 Speed 8 corporate insiders received an illegal kickback of 25% of Payteller stock for 'finding' the Russian investor. The 8 Speed 8 corporate insiders personally guaranteed the capital contributions provided to Payteller as a further condition to the execution of the closing documents. In short, the Russian company received the right to receive interest and capital and

the additional right to convert its loan into Payteller equity in consideration for the investment capital required for the operation of Payteller; Payteller received a "no risk" monetary amount of 10 million dollars with the additional right for another 15 million dollars through an unsecured line of credit.  If Payteller defaulted on its terms, then the 8 Speed 8 corporate insiders were responsible for the principal and interest on the loan.   The 8 Speed 8 corporate insiders agreed to these terms, in part, because they were going to use their connection in the kiosk industry (which should have been provided to 8 Speed 8) to make their shares of stock in Payteller more valuable. However, Okhman's sworn statement confirms that Payteller is nothing more than a money laundering operation.  The capital contributions that were deposited into Payteller were not converted into business opportunities because to do so would mean that Payteller would be required to make capital expenditures on those business opportunities.  The Payteller principals were too busy using the money to fund their own lavish lifestyles and could, in fact, do this because the 8 Speed 8 corporate insiders were personally responsible for the Payteller principals' decisions. The 8 Speed 8 corporate insiders robbed 8 Speed 8 and, derivatively, Vibe Micro through, in part, racketeering with Payteller.  The racketeering enterprise backfired against, at minimum, Okhman and resulted in Okhman coming forward and telling the truth regarding the RICO Enterprise.

7. The 8 Speed 8 corporate insiders' transactions were done without anyone, including The Law Firm, notifying the bankruptcy court.  The Bad Faith Involuntary Bankruptcy Litigation continued and, still, neither the law firm nor the parties bothered to inform the bankruptcy court of any of the transactions.  The participants who engaged in this conduct attempted to cover up their involvement by insulating themselves through filing corporation after corporation. The RICO Enterprise continued after the closing of the Payteller Transaction.  The 8 Speed 8 corporate insiders brought other, third party Russian investors into the fraud in order to recover money for

themselves.    Those third party Russian investors include the Dolce Group and Marat Vladimirovich Kasaev.  They did so under the guise of a Securities Transaction to further insulate the Payteller Defendants and the 8 Speed 8 corporate insiders from liability.  The transactions were based on fraudulent and overinflated valuations in Payteller.  All such stock valuations were fictional as Payteller—through the admissions of Okhman—were not pursuing the business opportunities that would support such valuations.  The 8 Speed 8 corporate insiders received over 2 million dollars in cash in consideration for those stock transactions and used this money to continue to fund their own lavish lifestyles in complete disregard for the fiduciary obligation of loyalty, trust and repose that  they owed to 8 Speed 8 and, derivatively, to Vibe Micro.

8.    All such conduct was perpetrated by the 8 Speed 8 corporate insiders in violation of the automatic stay during the preferential transfer period provided by the Bankruptcy Code.  Moreover, the funding that was provided to Payteller was provided via interstate commerce from the 8 Speed 8 corporate insiders prior to the closing, through a 'bridge loan' and was reimbursed to the 8 Speed 8 corporate insiders after the loan was closed.  All such transactions were sent via wire transmittal.  The transactions were done through the 8 Speed 8 corporate insiders, both individually and through a number of corporate entities.  Those entities were controlled, in whole, or in part, by The 8 Speed 8 corporate insiders and the Payteller Defendants.  In essence, money was coming in from entities that were being controlled by the 8 Speed 8 corporate insiders during the Bad Faith Involuntary Bankruptcy Litigation to Payteller at the time that the 8 Speed 8 corporate insiders knew that their conduct of filing for bankruptcy was being scrutinized, closely, as a potential bad faith filing based on the information provided to the bankruptcy court by Edward Mandel and Vibe Micro.  It was later determined that the filing was, in fact, filed in bad faith.  After that bad faith determination, other third party investors were induced into purchasing shares

of stock in entities that had insider knowledge of the fraud being perpetrated by Payteller at inflated and unreasonable prices. The Payteller Defendants and the 8 Speed 8 corporate insiders unjustly enriched themselves in the process. It was done through an enterprise of individuals and corporations; aided and abetted by their respective counsel. It triggers claims sounding in the violation of the Racketeering Influenced and Corrupt Organization Act, or 18 U.S.C.A. § 1962 and additional claims for aiding and abetting such conduct and further conspiring to perpetrate such conduct. It triggers subject matter jurisdiction with the Court based on the federal questions being presented.

<u>**BACKGROUND OF THE 8 SPEED 8 TRANSACTION**</u>

9.      **The 8 Speed 8 Transaction.**    The 8 Speed 8 Transaction is governed by a Shareholder Agreement (hereinafter "8 Speed 8 Shareholder Agreement"). A copy of the 8 Speed 8 Shareholder Agreement is attached hereto as **EXHIBIT "A."** The 8 Speed 8 Shareholder Agreement evidences, in part, that the shareholders would be implementing fully functioning payment terminals[3] for the stated purpose of owning and operating a full service money service provider company and agent service provider company.[4] The shareholders of 8 Speed 8 are <u>Luxor</u>, <u>Vibe Micro</u> and <u>SIG Capital</u> (collectively "corporate shareholders"). The 8 Speed 8 Shareholder Agreement was signed by the corporate shareholders. The officers and directors of 8 Speed 8 are referenced in Article 19—Corporate Governance Matters—of the 8 Speed 8 Shareholder Agreement. There, it provides that Okhman is its President. Shabanets is the Chief Operations Officer and Treasurer and further served as Secretary of 8 Speed 8. Mandel is serving as the Chairman of the Board. A corporate amendment was subsequently executed to ratify that Guarino would be assigned with officer and director responsibilities on behalf of 8 Speed 8.

---

[3] See Page 1 of 8 Speed 8 Shareholder Agreement.
[4] See Page 3, Article Four—Corporate Purposes—Section 4.1 of the 8 Speed 8 Shareholder Agreement.

10.     A review of the Nevada Division of Corporations website evidences the fact that Parker is serving as President, Secretary, Director and Treasurer of 8 Speed 8.  An additional review of the Nevada Division of Corporations website provides, in part, that Okhman serves as the manager of Luxor.  Shabanets serves as the President, Secretary, Treasurer and Director of SIG.  Mandel was the controlling member of Vibe Micro but is not listed as an officer or director of Vibe Micro.

11.     As industries like the Marijuana business is increasing in popularity in states that include Colorado and Washington, companies in those areas are seeking to make profits from such popularity.  However, due to the fact that most states and the Federal Government have not legalized such industry, many commercial banks will not permit those that are engaging in this enterprises to open a bank account.  It is commonly known through extensive reporting that banks are weary of accepting deposits from legal Marijuana businesses in, for example, Colorado and Washington as those companies that are seeking to profit from the Marijuana boom in states such as Colorado and Washington need a way to process money.  Others without bank accounts may attempt to conduct their monetary transactions through cashier's checks at Supermarket and convenience stores and the like.  The payment terminals are a solution to all such issues.  There was value in 8 Speed 8 as a result of this fact.

12.     The parties to the 8 Speed 8 Shareholder Agreement had a dispute.  The dispute occurred between Edward Mandel and Vibe Micro, as corporate dissenters, and the majority shareholders and interested persons.  Those shareholders and interested parties are as follows: (i) Shabanets; (ii) SIG; (iii) Okhman; (iv) Luxor, (v) Guarino and (vi) Parker.  The crux of the dispute was that SIG was contractually required, but was refusing, to provide 8 Speed 8 with an agreed

upon capital contribution so that the company could continue with developing the technology and contract with third parties who were interested in utilizing these services.

13.     Vibe Micro sought to protect 8 Speed 8 and, derivatively, the interest that Mandel and Vibe Micro had in 8 Speed 8.  They retained counsel, Dexter W. Lehtinen, Esquire, Tew Cardenas, LLP.  Tew Cardenas provided the arbitration demand to the parties to The 8 Speed 8 Shareholder Agreement on November 25, 2013 ("**The Arbitration Demand**").  A copy of The Arbitration Demand is attached hereto as **EXHIBIT "B."**  The Arbitration Demand requested, in part, for The Arbitrator to adjudicate the parties' shareholder dispute.  The arbitration procedure, defined above, is the exclusive forum for the shareholder corporations to adjudicate disputes on behalf of 8 Speed 8.

14.     Rather than comply with it, The 8 Speed 8 Defendants engaged in five separate wrongful acts.  The wrongful acts are set forth below.

        a.      The first wrongful act was corporate sabotage through looting 8 Speed 8 of its assets.

        b.      Second, The 8 Speed 8 Defendants wrongfully transferred The 8 Speed 8 Assets to Rain Kiosk.

        c.      Third, SIG Capital and Shabanets[5] filed for involuntary bankruptcy against 8 Speed 8 (hereinafter "**Bad Faith Involuntary Bankruptcy Litigation**").

        d.      Fourth, Shabanets, Sorsher and Woroboff submitted false information to the Hollywood Police Department and the Sunny Isles Police Department for the purpose of having Edward Mandel incarcerated.  Each of the police departments relied on the false and fraudulent sworn affidavits and statements under oath submitted by Sorsher, Woroboff and Shabanets and

---

[5] presumably based on the theory that 8 Speed 8 no longer had assets after The 8 Speed 8 Defendants looted it and then transferred it to Rain Kiosk

arrested Edward Mandel; resulting in a tremendous amount of emotional distress to Edward Mandel as a direct and proximate result of this conduct.

   e. The 8 Speed 8 Defendants—aided and abetted by The Law Firm—committed bankruptcy fraud by doing the following:

    i. Failure to disclose the fact that that 8 Speed 8 had close to $300,000.00 of assets at the time that the Bad Faith Involuntary Bankruptcy Litigation was filed;

    ii. Admission via email correspondence that the Bad Faith Involuntary Bankruptcy Litigation was filed by SIG and Shabanets for the bad faith purpose of "**getting Ed out of the picture.**"[6]  Specifically, the email correspondence provides, in part, as follows: **had to file bankruptcy to get Ed out of the picture and dissolve 8Speed8.  Rain kiosk will be the new name officially.  Happening in the next 48 hours . . .**[7]

    iii. Destruction of 8 Speed 8 corporate documents during the Involuntary Bad Faith Bankruptcy Litigation;

    iv. Admission during the deposition of Shabanets that the sole  purpose of SIG and Shabanets filing the Bad Faith Involuntary Bankruptcy Litigation was for SIG and Shabanets to "*get their money back,*" or referring to the agreed upon capital contribution that SIG and Shabanets had made and would be required to make in 8 Speed 8 in moving forward.  Such action was filed despite the fact that the parties to the 8 Speed 8 Shareholder Agreement acknowledged that arbitration would be the exclusive forum to adjudicate disputes.  It was filed without resorting to state court remedies.  It was filed without requesting that the other shareholders and officers and directors, or Mandel, Okhman, Vibe Micro and Luxor, reimburse SIG and

---

[6] Bold, font and italics added for additional emphasis.
[7] Bold and highlighted font added for additional emphasis.  See email from Paul Vachal, Senior Sales Manager of Nano Nation, to Collin Aldrich dated December 18, 2013; as evidenced by the attached **EXHIBIT "C"**.

Shabanets.  It was filed as a result of the officers and directors of 8 Speed 8 acquiesced to throwing 8 Speed 8 into the Bad Faith Involuntary Bankruptcy Litigation as the officers and directors of 8 Speed 8 conspired with SIG and Shabanets to bankrupt 8 Speed 8 and transfer the corporate assets to other third parties that Edward Mandel was not involvedjk in; i.e., Rain Kiosk and, later, Payteller.

v.    The Law Firm participated in The Bad Faith Involuntary Bankruptcy.  It was an action that The Law Firm knew or should have known was false, as a matter of fact, at the time that the Law Firm filed its notice of appearance.  Law Firm had actual knowledge that it was filed to "*get Ed out of the picture*" and for SIG and Shabanets to "*get their money back from the capital contribution that they contractually issued to 8 Speed 8.*"  This is not a legitimate reason for a bankruptcy action.[8]  This gives rise to sanctions for the bad faith bankruptcy filing against The Law Firm as per Rule 9011 of the Federal Rules of Bankruptcy Procedure and Rule 11 of the Federal Rules of Civil Procedure.[9]  Vibe Micro had demanded arbitration immediately prior to the Bad Faith Involuntary Bankruptcy Litigation.  Any issues regarding 8 Speed 8 should have been resolved in arbitration; Shabanets was not able to answer the question of why the issues could not have been resolved there or, in fact, through the agreed upon arbitration process outlined by The 8 Speed 8 Shareholder Agreement.

---

[8] *See In RE: Phoenix Piccadilly, Ltd.,* 849 F.2d 1393 (11th Cir. 1988) (affirming the bankruptcy court order of finding of bad faith by the consideration of circumstantial evidence including (i) the debtor holding of one asset that it does not hold title to; (ii) the debtor has few unsecured creditors whose claims are small in relation to the claims of secured creditors; (iii) **the debtor has few employees**; (iv) the property is the subject of foreclosure action as a result of arrearages on the debt; (v) the debtor's financial problems involve essentially a dispute between the debtor and the secured creditors which can be resolved in the pending state court action and (vi) **the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights**.  *See also In re Better Care,* 97 BR 405 (Bankr. N.D. Ill. 1989) (award of attorneys' fees, costs, and actual damages arising from bad faith involuntary bankruptcy filing based on the evidence that the involuntary bankruptcy filing was done, in part, to ensure that the creditor who brought the company into bankruptcy would obtain control of the company—a remedy more appropriately accomplished through a state court proceeding).

[9] See, e.g.., *In Re: Little Rest Twelve, Inc.,* 2015 WL 1318912 (S.D. Fla. 2015) (granting an award of sanctions against the attorney that filed the bankruptcy action in bad faith as the underlying dispute was one of corporate ownership; the bankruptcy action was only filed after an adverse ruling in New York State Court).

vi.    Rather than fund 8 Speed 8, The 8 Speed 8 Defendants—being aided and abetted by the Law Firm— furthered their intent of "*getting Ed out of the picture*" and ensured that Shabanets and SIG would get their money back from 8 Speed 8 through the utilization of an "Insider," as defined by the Bankruptcy Code[10] to engage in a Preferential Transaction[11] of 'finding' the Payteller Transaction.  The 8 Speed 8 corporate insiders wired money in the form of a bridge loan to Payteller during the pendency of the The Bad Faith Involuntary Bankruptcy without disclosing any of it to the bankruptcy court.  The 8 Speed 8 corporate insiders received valuable consideration in the form of a large percentage interest in Payteller in consideration as a 'finder fee' for inducing the Russian investment company to fund the 25 million dollar loan commitment; all of which occurred without moving for relief of the automatic stay created by the Bad Faith Involuntary Bankruptcy Litigation[12] (hereinafter referred to as "**The Illegal Payteller Transaction**").  The result of The Illegal Payteller Transaction was that Shabanets and SIG were able to achieve their desired result in connection with the Bad Faith Involuntary Bankruptcy Litigation of "*getting their money back*" by flipping some of their stock to other Russian investors based for large amounts of cash based on fraudulent valuations that were provided to these third party Russian investors.

vii.    Not only did The Law Firm have actual knowledge that the Bad Faith Involuntary Bankruptcy Litigation was being prosecuted in bad faith and for improper purposes, but The Law Firm also orchestrated an elaborate series of documents during the preferential transfer period of 8 Speed 8's Bad Faith Involuntary Bankruptcy and court ordered discovery period of the Bad Faith Involuntary Bankruptcy Litigation that were designed to conceal

---

[10] See 11 U.S.C. §101(31)(B) (i – vi).
[11] As defined by 11 U.S.C. §547.
[12] See 11 U.S.C. §362[f]

from the bankruptcy court and Edward Mandel that the "insider" officers and directors of 8 Speed 8 were sabotaging 8 Speed 8 by using "shell" entities and membership and subscription agreements in order to participate and acquire an equity interest in The Illegal Payteller Transaction.   This conduct was perpetrated after the court in the Bad Faith Involuntary Bankruptcy Litigated noted that it may enter findings of bad faith against the 8 Speed 8 corporate insiders for their attempt to bankrupt 8 Speed 8.

        viii.    The Illegal Payteller Transaction is set forth as follows.  First, Parker is an officer and director of 8 Speed 8.  8 Speed 8 is the debtor in the Bad Faith Involuntary Bankruptcy Litigation initiated by SIG and Shabanets.  Parker is also the single manager listed by the Nevada Division of Corporations on behalf of TBP Management.  The single manager of ISS Management is TBP Management.  Therefore, Parker is an officer or director of 8 Speed 8 and is also—at least on paper—the controlling person on behalf of ISS Management.   Second, a review of the attached Action by Unanimous Consent Of The Managers of ISS Management dated August 21, 2014[13] and the Convertible Secured Promissory Note dated August 26, 2014[14]—evidenced by the attached **COMPOSITE EXHIBIT "D"**—*the same month as Shabanets confirmed during his deposition of the illegal purpose of the filing of the Bad Faith Involuntary Bankruptcy Litigation[15]*—demonstrates that the managers of ISS Management were, in part, Shabanets and Okhman.  ***Therefore, the "insiders[16]" of the Bad Faith Involuntary Bankruptcy Litigation were also acting as the managers of ISS Management.***

        ix.    A review of the **COMPOSITE EXHIBIT D** confirms, in part, that ISS Management, as Lender, participated in a transaction of providing 25 million dollars in

---

[13] The ISS Management Board Resolution.
[14] The ISS Note.
[15] Italics added for emphasis.
[16] As that term is defined by the Bankruptcy Code.

funding to Payteller[17]--including an initial advance of 10 million dollars—in consideration for ISS Management receiving (a) quarterly interest payments; (b) a balloon payment on the Maturity Date; (c) the right to convert the loan into a 37.5% equity interest in Payteller.   This is further confirmed by Payteller's August, 2014 Press Release ("**The Press Release**"); a copy of it is attached hereto as **EXHIBIT "E."**   A further review of The Press Release provides, in part, that Guarino, another officer and director of 8 Speed 8, was the contact person for Payteller.   ***In short, one officer and director of 8 Speed 8, Parker, is providing 25 million dollars to 8 Speed 8's competition, or Payteller, and another 8 Speed 8 director, or Guarnio.***[18]

15.     The false arrest occurred on November 23, 2013.   The 8 Speed 8 Defendants had previously called a special meeting to be conducted in Nevada two days later, or November 25, 2013.  As documented in The Arbitration Demand,[19] the special meeting was irregular, on its face, as it was premised on SIG Capital having shareholder and voting rights that had not, either at that time or any time thereafter, vested.   Vibe Micro disputed the validity of the special meeting.    The 8 Speed 8 Defendants have maintained that they did not move forward with the special meeting. However, a shareholder meeting was conducted while Mandel was incarcerated.   During that time, the 8 Speed 8 corporate insiders[20] conspired together to throw 8 Speed 8 into the Bad Faith Involuntary Bankruptcy Litigation.   The Bad Faith Involuntary Bankruptcy Litigation was initiated on December 13, 2013, days after Edward Mandel was arrested.   Edward Mandel was powerless to prevent such conduct from moving forward.    He was forced to retain counsel, Katie Phang, Esquire, to address the wrongful arrest.   The false arrest case was dismissed on February 18, 2014. However, the damages had been done.   The 8 Speed 8 Defendants were (i) moving forward with

---

[17] See Paragraph 2, Section 2.1 of The ISS Note.
[18] Bold, italics, and underlined font added for additional emphasis.
[19] *See* EXHIBIT B.
[20] See Page 87 of deposition of Shabanets dated August 7, 2014.

the Bad Faith Involuntary Bankruptcy Litigation; (ii) transferring The 8 Speed 8 corporate assets consisting of cash and intellectual property rights to, first, Rain Kiosk and, later, Payteller; and (iii) had cut off distributions to Vibe Micro and therefore deprived Edward Mandel from receiving income and were burying Vibe Micro and, therefore, Edward Mandel in legal fees.

16.     The 8 Speed 8 Defendants engaged in this conduct because they thought they could. They did it because they believed that neither Edward Mandel nor Vibe Micro would have the financial wherewithal to contest such conduct.  They did it because they wanted to exhaust Edward Mandel, both physically and mentally; i.e., *acquiesce to their conduct or face the consequences*. This is documented by an email from Shabanets to Okhman dated October 12, 2013; a copy of which is attached hereto as **EXHIBIT "F."**  There, Shabanets' state of mind regarding the way in which Edward Mandel would be 'handled' is clear.  It provides, in part, as follows:

> "Edic, Recently, we discovered many things that you do or say as a friend and partner, which is totally unacceptable. . .. **We want to destroy you, both physically and mentally, and because you used to be our friend, and** we also know, your family, we're going to offer you this without bargaining proposals. . . .if you do not agree, we just want to warn you that we will not have no mercy [sic], and we will go after Sol, as well.  **At best, you end up in court, in the worst case, you'll end up in the ocean.**[21]

17.     This conduct backfired on The 8 Speed 8 Defendants.  Edward Mandel did "***not end up in the ocean***," as the email very clearly states.  Instead, Edward Mandel and the company that he controlled, or Vibe Micro, retained counsel in Las Vegas, Nevada to contest The Bad Faith Involuntary Bankruptcy Litigation.   It contested it through, in part, issuing third party subpoenas and other discovery requests.  It was through that discovery procedure that Vibe Micro and Edward Mandel learned the perpetrators of the 8 Speed 8 corporate sabotage were utilizing the exact same procedure that SIG Capital was utilizing in its dealings with Edward Mandel and Vibe Micro on

---

[21] Bold and highlighted font added for additional emphasis.

The HUC Transaction:  That is, corporate fraud and sabotage to wipe out the corporate entity that Edward Mandel and Vibe Micro had a beneficial interest in, or in this case, 8 Speed 8, and to thereafter roll the assets of 8 Speed 8 into a newly formed entity, or Rain Kiosk and, when that didn't work, Payteller.  Going back to the Rain Kiosk, SIG Capital, 8 Speed 8 and Luxor—together with Shabanets, Okhman and Guarino—provided one third party entity with a "whiteboard display."  The whiteboard display is attached hereto as **EXHIBIT "G."**  It lists the shareholders of 8 Speed 8.  It shows that The Bad Faith Involuntary Bankruptcy Litigation would result in the elimination of Vibe Micro from having any interest in the assets of 8 Speed 8.  It then provides for the creation of Rain Kiosk as the new, successor corporation of 8 Speed 8.  It further shows that the assets of 8 Speed 8 consisting of, in part, cash and intellectual property, would be transferred from 8 Speed 8 into Rain Kiosk.  It further shows the total elimination of Edward Mandel as an officer or director, and Vibe Micro as a shareholder of such newly formed entity.  In short, the 8 Speed 8 corporate insiders eliminated Edward Mandel and Vibe Micro from having any interest in the assets of Rain Kiosk in a similar manner in which SIG Capital—through Shabanets— eliminated Vibe Micro and Edward Mandel from having any sort of beneficial interest in the assets of HUC.  This is corporate fraud.

18.     The Bad Faith Involuntary Bankruptcy Litigation was a sham.  It was, as a matter of fact, a bad faith bankruptcy filing.  It was designed to force a stay of the pending arbitration action initiated by Mandel and Vibe Micro through the designated arbitrator, or Sol Saad ("The Arbitrator").  The matter was, at most, a corporate dispute that is beyond the scope and purview of the bankruptcy court.  It was further designed—by their own admissions—to "*get Ed out the picture*" through using the automatic stay as a shield (from the arbitrator) and as a sword (to effectuate the desired transfers of assets and equity interests in third party entities) to conspire

together between the perpetrators of The Bad Faith Involuntary Bankruptcy Litigation to transfer

the corporate assets to Rain Kiosk and, thereafter, engage in officer and director "insider" self-

dealing to issue 25 million dollars of funding to 8 Speed 8's competitor, or Payteller, without

disclosing the information to 8 Speed 8's shareholder, or Vibe Micro, and without obtaining stay

relief.  The 8 Speed 8 corporate insiders destroyed evidence during this time.  The 8 Speed 8

corporate insiders hid over $300,000.00 of corporate assets from the bankruptcy court.  There was

simply no legitimate reason for this filing but to ensure that Ed would be out of the picture and to

pave the way for the 8 Speed 8 corporate insiders to purchase the corporate assets after the

discharge of the bankruptcy, to begin with, through their new corporate entity, or Vibe Micro, and

therefore ensure that Edward Mandel would, in fact, be out the picture.  The Bad Faith Involuntary

Bankruptcy Litigation was dismissed by the Court on September 18, 2014.

19.     The following day, or September 19, 2014, Vibe Micro sought to protect the

corporate assets.  It did so through requesting intervention from The Arbitrator; as evidenced by

the correspondence attached hereto as **EXHIBIT "H"**  The Arbitrator entered an interim order

entitled "Arbitration Findings, Order and Award;" (hereinafter "The Interim Order"); a copy of

which is attached hereto as **EXHIBIT "I."**  There, The Arbitrator clearly found that the assets of

8 Speed 8 were illegally transferred to Rain Kiosk (or other persons or entities unknown to

Plaintiffs at this time) and that all such assets were the sole and exclusive property of 8 Speed 8

and would be governed and administered by Vibe Micro.

20.     The parties engaged in extensive litigation regarding The Interim Order.

Ultimately, The Interim Order was vacated by the Court.  Vibe Micro has initiated an amended

demand for arbitration along with a motion for injunctive relief before the new arbitrators, or Glenn

J. Waldman and David Lichter.  The arbitration filings were initiated by Vibe Micro, derivatively,

on behalf of 8 Speed 8 and against 8 Speed 8 and its majority corporate shareholders, or SIG and Luxor.  The claims are those sounding in breach of fiduciary duty, common law fraud and civil conspiracy.  It is based on the allegation that the corporate majority shareholders, or Luxor and SIG, breached their fiduciary duty of loyalty, trust and repose that the corporate majority shareholders owed to 8 Speed 8 by looting it, sabotaging it, and bankrupting it for the stated purpose of  "*getting Ed out of the picture.*"[22]

21.    Vibe Micro is bringing derivative claims for adjudication before this Court on behalf of those non-signatories to the 8 Speed 8 Shareholder Agreement that participated in defrauding 8 Speed 8 through the conduct described, above in this Court.  The looted 8 Speed 8 and engaged in racketeering evidenced by a number of predicate acts in order to transfer assets and money into its direct competitor, or Payteller.[23]

## VENUE AND JURISDICTONAL ALLEGATIONS

22.    This is an action for damages in an amount in excess of Seventy Five Thousand Dollars ($75,000.00); exclusive of attorneys' fees, costs and related expenses.  The Court further has subject matter jurisdiction as per 18 USCA §1961.

23.    Vibe Micro is a foreign corporation that is controlled by Edward Mandel.  It is domiciled in the State of Nevada and is doing business within the jurisdiction of the Southern District of Florida.

24.    Mandel is domiciled and principally doing business in the Southern District of Florida.

---

[22] This refers to Edward Mandel, as interested party in Vibe Micro.
[23] See, e.g., *Bank of America vs. Beverly, et.al.,* 2015 WL 3609101 *2-3 (Fla. 4th DCA June 10, 2015) (court erred in determining the arbitrability of the claims made by the parties to the loan agreement but those parties that are not signatories are not bound by the arbitration provision in the loan agreement)

25.     SIG Capital is a foreign corporation that is domiciled in the State of Nevada but is doing business in the Southern District of Florida through its involvement in the 8 Speed 8 Transaction.

26.     Shabanets is doing business in the Southern District of Florida through conspiring with SIG, Luxor, Guarino, Okhman, and Parker to breach the fiduciary duty of loyalty, trust and repose that each of them had to 8 Speed 8 by sabotaging it, bankrupting it and diverting assets and capital to competing companies, including one that is principally domiciled and doing business in the State of Florida, for the sole reason of squeezing Vibe Micro and, thus, Mandel, out from any interest in the business dealings.  There was no other legitimate business reason for initiating the Bad Faith Involuntary Bankruptcy Litigation.   This fraudulent conduct subjects Shabanets to the jurisdiction of the Southern District of Florida.

27.     Okhman is listed by the Nevada Division of Corporations as the single manager of Luxor, LLC.  As documented, above, through FN 2, the Plaintiffs have resolved their differences with Okhman and Luxor through the execution of a settlement agreement on July 10, 2015.

28.     Rain Kiosk is a bogus foreign corporation that was formed as part of the RICO Enterprise.  It was formed to defraud 8 Speed 8 and its shareholders, including Vibe Micro, through its being used as a vehicle to receive assets in the form of cash, property, and intellectual property that belonged to 8 Speed 8 until it was stolen from 8 Speed 8 by the 8 Speed 8 corporate insiders.

29.     Payteller is a Florida limited liability company that is domiciled and principally located in Palm Beach County, Florida and is therefore subject to the jurisdiction of the Court. Foster and Yon are the members of Payteller and the key decision makers on behalf of such entity. Payteller, by and through its managing members, Foster and Yon, retained Guarino as its Chief Strategy Officer during the time that Guarino was acting as an officer and director of 8 Speed 8.

This occurred during the course of the Bad Faith Involuntary Bankruptcy Litigation.  Payteller, Foster and Yon (collectively "**The Payteller Defendants**") participated in the RICO Enterprise through retaining the services of Guarino and thereafter entering into the securities transaction of providing Guarino and the other corporate insiders of 8 Speed 8 the right to receive a substantial equity interest in Payteller in consideration for the corporate insiders of 8 Speed 8 providing The Payteller Defendants with a 25 million dollar financing commitment—10 million of which was paid at the closing of The Payteller Transaction.

30.      The RICO Enterprise is ongoing through an association in fact enterprise as Payteller has provided payments that were derived during the time that the Payteller Defendants had actual knowledge that the 8 Speed 8 corporate insiders were in the middle of their Bad Faith Involuntary Bankruptcy Litigation  to a number of third party entities after the closing of the Payteller Transaction; all of which was designed to enrich those that are in control of Payteller and the 8 Speed 8 corporate insiders.[24]  All of which occurred during Preferential Transfer Period of the Bad Faith Involuntary Bankruptcy Litigation.  None of which was disclosed to the Court during the Bad Faith Involuntary Bankruptcy Litigation; despite the fact that the 8 Speed 8 corporate insiders were on actual notice that the Court was scrutinizing their activity for a bad faith bankruptcy filing at the time that the actions were committed and entered orders confirming the fact that the bankruptcy action was, in fact, filed in bad faith.  All such conduct renders The Payteller Defendants as part of the RICO Enterprise and/or association in fact enterprise as that

---

[24] See, e.g., *The Cadle Company vs. Flanagan,* 271 F.Supp.2d 379, 386 (D. Conn. 2003) (plaintiffs' have adequately plead the existence of a RICO Enterprise including an "association in fact enterprise" as the purpose of the defendant's enterprise was to "accomplish the fraudulent transfer and continuing custodianship of the defendant's assets and to shield those assets from the claims of the plaintiffs and that the defendant enlisted the support of numerous friends, family members and business associates to help him with the fraudulent scheme).

term is defined in 18 USCA §1962(a), and, therefore, subjects Payteller to the jurisdiction of the Court.

31.     Card Platforms is a Florida limited liability company that is principally domiciled and doing business within the jurisdiction of the Southern District of Florida.  It is controlled by Foster and Yon, or those that are in control of Payteller.  Card Platforms is part of the RICO Enterprise as it received illegal proceeds derived from the Illegal Payteller Transaction in furtherance of its ongoing business operations of, in part, engaging in business opportunities in the Marijuana business.

32.     Kiosk Consulting is a foreign limited liability company that is principally domiciled in the State of Colorado.  Guarino is operating as its manager.  It is part of the RICO Enterprise as the company was organized during the Bad Faith Involuntary Bankruptcy by Guarino.  Guarino utilized Kiosk Consulting during the Bad Faith Involuntary Bankruptcy to shield the fact that she, through Kiosk Consulting, received a 2.5% interest in ISS Management with ISS Management receiving an equity interest through the Illegal Payteller Transaction.

33.     TBP Management and ISS Management are each Nevada limited liability companies that participated in the RICO Enterprise by participating in the securities transaction designed to ensure that the corporate insiders of 8 Speed 8 would receive an equitable interest in its competitor, or Payteller, during the prosecution of the Bad Faith Involuntary Bankruptcy Litigation.

34.     After the closing of The 8 Speed 8 Transaction, ISS Management was separated into three separate entities; one of which is Big Capital, LLC.  Big Capital, LLC is owned and managed by Shabanets.  It participated in the RICO Enterprise by flipping stock it acquired in

Payteller at fraudulent prices to third party Russian investors.   This subjects Big Capital to being part of the RICO Enterprise and subjects it to the jurisdiction of the Court.

35.     Guarino is subject to the jurisdiction of the Southern District of Florida because Guarino was an officer and director of 8 Speed 8 and breached her fiduciary of loyalty, trust and repose to 8 Speed 8 through accepting an employment position with Payteller as part of the RICO Enterprise of steering money into Payteller during the pendency of the Bad Faith Involuntary Bankruptcy Litigation.   Guarino further participated in the RICO Enterprise through the destruction of documents during the Bad Faith Involuntary Bankruptcy Litigation and through the participation in Payteller Compliance as the Vice President of Marketing and received money and other considerations from the steering of money into Payteller during the Bad Faith Involuntary Bankruptcy Litigation.

36.     Payteller Compliance is a foreign limited liability company that is owned and operated by Foster and Yon, or those that are also the principals and controlling interested parties in Payteller.  It further employs Guarino in derogation of her fiduciary duty of loyalty, trust and repose that Guarino owed to 8 Speed 8.  It is part of the RICO Enterprise through employing Guarino and the Payteller Defendants and has received illegal monies through the participation in the racketeering activity.

37.     Payteller Attorney and the Park Law Firm is the legal counsel for Payteller. Payteller Attorney is a licensed attorney in the State of Florida and principally works in an in house counsel arrangement with Payteller in the Southern District of Florida.  Payteller Attorney utilizes Park Law Firm as its corporate entity.  Park Law Firm is a Florida corporation that is doing business in the Southern District of Florida.  Payteller Attorney and the Park Law Firm participated in the RICO Enterprise through issuing securities for a percentage of interest in Payteller and then

issuing monies to those that participated in the RICO Enterprise after the closing of the Illegal Payteller Transaction.

38.     D2P Ventures is a Florida limited liability company that is owned and operated by the Payteller Defendants, or Foster and Yon and participated in the RICO Enterprise through receiving monies from the Illegal Payteller Transaction after it closed.

39.     The Law Firm is a foreign limited liability partnership that is doing business in the Southern District of Florida through doing the following: (i) actively representing the alleged 'creditor' in The Bad Faith Involuntary Bankruptcy Litigation to avoid the arbitration litigation in connection with The 8 Speed 8 Agreement in the State of Florida; (ii) concealing documents during the Bad Faith Involuntary Bankruptcy Litigation regarding the value of The 8 Speed 8 corporate assets—despite having the information to substantiate such assets during that time; (iii) participating in its client, Shabanets—on behalf of SIG Capital (as petitioning creditor in the Bad Faith Involuntary Bankruptcy Litigation) deposition and receiving record testimony that the Bad Faith Involuntary Bankruptcy Litigation it filed was, in fact, filed in bad faith; (iv) having actual knowledge from the transcript on the proceedings dated July 10, 2014 that that Judge refused to grant SIG Capital's motion to dismiss the Bad Faith Involuntary Bankruptcy Litigation because there were questions of whether the petition was filed in bad faith at that time; (v) active participation in the transaction documents for the Illegal Payteller Transaction after the Court refused to grant SIG Capital's motion to dismiss the Bad Faith Involuntary Bankruptcy Litigation and stating, on the record, that the Court would assess whether the bankruptcy filing was done in bad faith; (vi) preparation of various corporate documents to actively conceal the fact that the 8 Speed 8 corporate insiders were participating in the Illegal Payteller Transaction after the Court placed the 8 Speed 8 corporate insiders on notice of her view that the Bad Faith Involuntary

Bankruptcy Litigation was filed in bad faith; (vii) failing to request relief of the stay from the Bad Faith Involuntary Bankruptcy Litigation to ensure that the Court was aware that the 8 Speed 8 corporate insiders were taking such activity; (viii) preparation of closing documents on the Illegal Payteller Transaction; (ix) failing to advise the Bankruptcy Court during the Bad Faith Involuntary Bankruptcy Litigation that the 8 Speed 8 corporate insiders were providing a 25 million dollar funding commitment to a direct competitor of 8 Speed 8 and that officers and directors of 8 Speed 8 were on both sides (borrower and lender) of the transaction; (x) failing to advise the Bankruptcy Court during the Bad Faith Involuntary Bankruptcy Litigation that the 8 Speed 8 corporate insiders were transferring money to Payteller through a 'bridge loan' prior to the closing of the Illegal Payteller Transaction; (xi) failing to advise the Bankruptcy Court that the 8 Speed 8 corporate insiders received the reimbursement of the money that they loaned to Payteller prior to the closing of the Illegal Payteller Transaction and further received a substantial equity interest in Payteller in consideration for their finding of the Russian investor that committed to the 25 million dollar investment in Payteller; (xi) active participation in the closing documents and the closing on the funding of the Illegal Payteller Transaction; (xii) failing to advise the Bankruptcy Court that the Illegal Payteller Transaction had, in fact, closed; (xiii) having actual knowledge that the Bankruptcy Court found the Bad Faith Involuntary Bankruptcy Litigation to have been filed in bad faith and yet, failed to advise the Court that the 8 Speed 8 corporate insiders had participated in the Illegal Payteller Transaction; (xiv) further active concealment that the 8 Speed 8 corporate insiders were unjustly enriched by the Illegal Payteller Transaction through their flipping percentages of their stock that they received in Payteller for unreasonably high prices based on fraudulent valuations in Payteller; (xv) lead record counsel on behalf of the Defendants in the State Court Litigation from the filing of a notice of appearance, attendance of various telephonic status

conferences and motions, and flying to Broward County, Florida on two separate occasions to present arguments on a motion to dismiss and a motion to vacate the interim arbitration award entered by the arbitrator; (xvi) filing a complaint in Broward County, Florida to vacate the interim order entered by the arbitrator; (xvii) filing a number of motions in Broward County, Florida and (xviii) otherwise actively aiding and abetting and conspiring with the RICO Defendants to create the enterprise designed to "*get Ed out of the picture*" and ensure that its client would get its money back from the debtor in possession, or 8 Speed 8.

40.     Venue properly lies in the Southern District of Florida because there is diversity jurisdiction regarding the corporate derivative claims involving 8 Speed 8 against those non-signatories to the 8 Speed 8 Shareholder Agreement. In addition, there are federal questions regarding the State and Federal Racketeer Influenced and Corrupt Organizations Act ("RICO"); or 18 U.S.C.A. §1961. The parties are either located or doing business in the Southern District of Florida. The 8 Speed 8 Shareholder Agreement provides, in part, that disputes would be adjudicated in the State of Florida and, in fact, the Judge in the State Court Litigation acknowledged that it had jurisdiction regarding the issues presented to it on the HUC Transaction and the 8 Speed 8 Transaction.

### THE FALSE ARREST AND THE INVOLUNTARY BANKRUPTCY LITIGATION

41.     Edward Mandel was falsely arrested as a result of those associated with the HUC Transaction falsifying affidavits and other sworn statements to the effect of Edward Mandel driving a stolen vehicle. The vehicle was titled to the Defendant Corporation but it was being paid for by Edward Mandel. The false arrest occurred on November 23, 2013. This occurred two days prior to the November 25, 2013 facially defective special meeting scheduled by the corporate

majority shareholders of 8 Speed 8.  A copy of the special meeting notice is attached hereto as **EXHIBIT "J."**

42.     Vibe Micro responded to the special meeting notice by retaining Dexter Lehtinen, Esquire, Tew Cardenas, LLP.  There, it objected to the facially defective special meeting notice for the reasons that are set forth in the correspondence dated November 25, 2013 and further demanded the intervention of the arbitrator, as evidenced by a copy of the correspondence attached hereto and previously referenced as **EXHIBIT B.**

43.     The 8 Speed 8 corporate insiders jointly agreed to bankrupt 8 Speed 8.[25]  They did so through acquiescing to SIG and Shabants filing the sham Bad Faith Involuntary Bankruptcy Litigation.   It was filed on December 13, 2013.  It is documented by DE 1 from the Bad Faith Involuntary Bankruptcy Litigation; evidenced by the attached **EXHIBIT "K."**

44.     The Bad Faith Bad Faith Involuntary Bankruptcy Litigation  was filed days after (i) the wrongful withholding of the deferred compensation due to  Edward Mandel and Irene Mandel for services that each of them rendered to the Defendant Corporation; (ii) the fraudulent conduct of Shabanets and Defendant Corporation issuing stop payments on the checks issued by Defendant Corporation to Irene Mandel and Samuel Mandel in consideration for services rendered and for the repayment of loans;[26] (iii) the fraudulent and false affidavit and sworn statements that were provided to the Hollywood and Sunny Isles Police Department by Sorsher and Worboroff; and (iv) the wrongful arrest that occurred as a result of the police departments reliance on the fraudulent and patently false affidavits and sworn statements.

45.     Edward Mandel resolved the wrongful incarceration.  Mandel and Vibe Micro  and Vibe Micro retained counsel and thereafter retained counsel to, in part, immediately acted on

---

[25] See Page 87 of deposition testimony of Shabanets dated August 7, 2014.
[26] See Counts IX and X of the Second Amended Complaint.

behalf of 8 Speed 8, by retaining the services of counsel in Nevada to undertake discovery in the

Bad Faith Bad Faith Involuntary Bankruptcy Litigation. That discovery included, without

limitation, the deposition of Shabanets and the issuance of a number of subpoenas to third party

vendors that had been doing business with 8 Speed 8. The 8 Speed 8 Defendants acknowledged

that it was filed for the improper purpose to "*get Ed out of the picture*" and to ensure that SIG and

Shabanets could reimburse themselves from the capital contribution that they provided to 8 Speed

8. Correspondence that clearly documents such fact is collectively attached hereto as **EXHIBIT**

**"L".** *See also* **EXHIBIT C**.

### THE 8 SPEED 8 CORPORATE INSIDERS PARTICIPATION IN THE ILLEGAL PAYTELLER TRANSACTION AND ITS INTERPLAY WITH THE BAD FAITH INVOLUNTARY BANKRUPTCY LITIGATION

46.     In addition, the 8 Speed 8 corporate insiders became interested in participating in a

joint venture relationship with Payteller during the Bad Faith Involuntary Bankruptcy Litigation.

It is documented through the execution of a Letter of Intent ("LOI") and a Letter of Understanding

("LOU"). Notably, the LOU provides, in part, that Payteller would be entitled to terminate the

non-binding relationship with the 8 Speed 8 corporate insiders if the loan was not funded by July

10, 2014.[27]

47.     The 8 Speed 8 corporate insiders were, however, in the middle of the Bad Faith

Involuntary Bankruptcy Litigation at that time, or the spring of 2014. The 8 Speed 8 corporate

insiders had not disclosed their potential involvement with Payteller in the Bad Faith Involuntary

Litigation. Such a disclosure would have opened a *Pandora's Box* of problems. The 8 Speed 8

corporate insiders knew of the problems that such disclosure would create. At the same time, The

---

[27] The effective date of the LOU is presently unknown, at this time. However, it is known through other documents
that the LOU was executed between the parties sometime between late March and late June, 2014 and that the 8 Speed
8 corporate insiders had until July 10, 2014 to provide the necessary funding commitment.

8 Speed 8 corporate insiders believed that the potential relationship with Payteller could be extremely lucrative.  The 8 Speed 8 corporate insiders did not want to lose this opportunity.

48.     The 8 Speed 8 corporate insiders had a decision to make during that time, or during the spring, 2014.  The decision was between **Option One** and **Option Two**.

a.     **Option One**.  Option One was the disclosure of the information regarding the potential Payteller transaction to Vibe Micro, as dissenting shareholder to the Bad Faith Involuntary Bankruptcy, and Edward Mandel.  It would further include the disclosure of this information to the bankruptcy court.  Had the 8 Speed 8 corporate insiders opted for Option One, the 8 Speed 8 corporate insiders knew that questions would have been raised.  Mandel and Vibe Micro would have vehemently objected to this conduct.  **For example, how could the officers and directors of 8 Speed 8 conspire between themselves to bankrupt it—IN BAD FAITH— and, at the same time, commit to this other, lucrative opportunity with Payteller?**  The funding commitments should have been directed to 8 Speed 8, not Payteller.  8 Speed 8 had assets; it had opportunities.  It most certainly could have pursued the exact same opportunities as the ones that Payteller represented that it had.  The 8 Speed 8 corporate insiders should have protecting its company and competing against Payteller.  The decision to proceed with Option One would have caused a high degree of scrutiny by the bankruptcy court.  It would have "spooked" the investors that were looking to participate in the Illegal Payteller Transaction.  It would have resulted in Payteller seeking other business partners for what it described as its lucrative business opportunities.   It was, therefore, not selected by The 8 Speed 8 corporate insiders.

b.     **Option Two.**  Option Two is bankruptcy fraud.  The 8 Speed 8 corporate insiders chose Option Two.  In doing so, The 8 Speed 8 corporate insiders did the following.  First, the 8 Speed 8 corporate insiders filed a motion to dismiss the Bad Faith Involuntary Bankruptcy

Litigation on June 17, 2014.[28]   A review of the motion to dismiss demonstrates that The 8 Speed 8 corporate insiders did not disclose the existence of the proposed Payteller Transaction.  Neither the LOI nor the LOU was disclosed.  Vibe Micro, as dissenting shareholder of 8 Speed 8, was not aware of it.  Vibe Micro opposed the motion to dismiss through, in part, providing the Court with some of the record discovery that it received during the course of the Bad Faith Involuntary Bankruptcy Litigation.  This included an email that the Bad Faith Involuntary Bankruptcy was filed to, in part, *get Ed out of the picture.*  Vibe Micro further produced documents showing that 8 Speed 8 had assets that had not been disclosed, including contracts and intellectual property.   The 8 Speed 8 corporate insiders and their counsel knew that 8 Speed 8 had close to Three Hundred Thousand Dollars ($300,000.00) in assets but didn't bother to inform the Court as to their existence.  The motion to dismiss was argued before the Bankruptcy Court on July 11, 2014.  During the hearing, the Court commented that, if the Court agreed to dismiss the Bad Faith Involuntary Bankruptcy Litigation, the Court would consider imposing bad faith bankruptcy filing sanctions against the 8 Speed 8 corporate insiders.  The matter was continued until August 20, 2014.[29]

49.     As of July 11, 2014, The 8 Speed 8 corporate insiders had a problem.  The LOU required The 8 Speed 8 corporate insiders to provide the funding commitment for the Payteller Transaction by July 10, 2014.  Not only had The 8 Speed 8 corporate insiders not funded the Payteller Transaction by or before July 10, 2014, but now its counsel had presumably made it aware that their conduct of initiating the Bad Faith Involuntary Bankruptcy Litigation could result in sanctions against The 8 Speed 8 corporate insiders.  In addition, Payteller Attorney notified the 8 Speed 8 corporate insiders, via email, that the funding obligations were due.  It was further

---

[28] See, DE 31 of the Bad Faith Involuntary Bankruptcy Litigation.
[29] See DE 43 of the Bad Faith Involuntary Bankruptcy Litigation.

communicated by Payteller Attorney to the 8 Speed 8 corporate insiders that Payteller would seek

funding elsewhere to finance their pending business opportunities unless the 8 Speed 8 corporate

insiders provided Payteller with the commitment to fund.

### THE LAW FIRM AIDED AND ABETTED THE RICO ENTERPRISE

50.     8 Speed 8 corporate insiders attempted to resolve their problem, i.e.; commit

bankruptcy fraud through the participation in the Illegal Payteller Transaction or disclose the

information to Vibe Micro and forego this opportunity;  through, in part, retaining the Law Firm.

The Law Firm had been actively representing The 8 Speed 8 corporate insiders regarding the

potential Payteller Transaction.  On July 30, 2014, the Law Firm filed its notice of appearance in

the Bad Faith Involuntary Bankruptcy Litigation.[30]

51.     At no time did the Law Firm make the bankruptcy court aware that The 8 Speed 8

corporate insiders were, on the one hand, attempting to bankrupt its company and, on the other,

attempting to provide financing commitments and an equity interest in Payteller. This is despite

the fact that it was representing the 8 Speed 8 corporate insiders in furtherance of each of those

goals.  Instead, Law Firm aided and abetted the Illegal Payteller Transaction.  In doing so, it

utilized 'shell' companies, including SIS Management and TBP Management, for the participation

in the execution and closing of the Illegal Payteller Transaction.  It provided The 8 Speed 8

corporate insiders with a membership interest in SIS Management without disclosing any of the

information for public view on the Nevada Division of Corporations.  Instead, it used The 8 Speed

8 Defendants' *front perso*n, or Parker, for such purpose.  It further layered the RICO Enterprise by

providing The 8 Speed 8 corporate insiders with their respective membership interests in SIS

---

[30] *See, e.g.,* DE 49 of Bad Faith Involuntary Bankruptcy Litigation.

Management through their respective corporate entities; or (i) Diana 868, LLC; (ii) Kiosk

Consulting for Guarino's interest; and (iii) SIG Capital for Shabanets' interest.

52.     On August 26, 2014, the Illegal Payteller Transaction closed.  Neither the Law Firm

nor The 8 Speed 8 corporate insiders bothered to disclose any of it to the bankruptcy court.  The

Bad Faith Involuntary Bankruptcy Litigation continued.  The Law Firm still failed to disclose the

Illegal Payteller Transaction to the Court.  On September 18, 2014, the Court granted Vibe Micro's

motion to dismiss the Bad Faith Involuntary Bankruptcy Litigation.[31]

**COMPLIANCE WITH CONDITIONS PRECEDENT**

53.     All conditions precedent have been met or satisfied or have otherwise been waived

and/or excused.

**COUNT I—BREACH OF FIDUCIARY DUTY (VIBE MICRO DERIVATIVELY ON BEHALF OF 8 SPEED 8 AGAINST THE 8 SPEED 8 CORPORATE INSIDERS AND PARKER AS PER RULE 23.1 OF THE NEVADA RULES OF CIVIL PROCEDURE)**

54.     Vibe Micro readopts and reincorporates the allegations contained in Paragraphs 1

through 53, inclusive, as if specifically incorporated herein.

55.     Vibe Micro, as minority shareholder of 8 Speed 8, brings its verified action

sounding in breach of fiduciary duty against the 8 Speed 8 corporate insiders and Parker as per

Rule 23.1 of the Nevada Rules of Civil Procedure.[32]

56.     At all times relevant herein, Vibe Micro was a shareholder of 8 Speed 8 when its

officers and directors breached their duty of loyalty, trust and repose that its officers and directors

owed to 8 Speed 8 by the 8 Speed 8 corporate insiders doing and/or failing to do the following:

> a.      By improperly transferring large amounts of cash from 8 Speed 8 to Rain
>         Kiosk without the consent of Vibe Micro and in direct violation of Article
>         16 of the 8 Speed 8 Shareholder Agreement in furtherance of its scheme to

---

[31] The decision to deny Vibe Micro to bad faith remedies against SIG and the 8 Speed 8 corporate insiders is the subject of an appeal.  The appeal is pending.
[32] Vibe Micro has filed its claim against the majority corporate shareholders, or Luxor and SIG, in arbitration.

get the controlling person of Vibe Micro, or Edward Mandel, out of the picture. *See, e.g., email from Paul Vachal, Senior Sales Manager of Nano Nation to Collin Aldrich dated December 18, 2013. . ..* "*Get Ed out of the picture*;"

b.    By improperly sabotaging and looting 8 Speed 8 by transferring intellectual property rights and interests comprised of (i) brand development and (ii) trademark rights to Rain Kiosk without the consent of Vibe Micro in furtherance of those efforts to "*Get Ed out of the picture*;"

c.    By failing to utilize the assets from 8 Speed 8 to create business opportunities and revenues;

d.    By filing the Bad Faith Involuntary Bankruptcy Litigation in furtherance of the efforts to sabotage and loot 8 Speed 8 in furtherance of the scheme to "*Get Ed out of the picture*" and to ensure that SIG and Shabanets would "get their money back" from 8 Speed 8 by liquidating 8 Speed 8 as a going concern and transfer its assets comprised of cash and intellectual property from 8 Speed 8 to Rain Kiosk as neither Vibe Micro nor Edward Mandel had a shareholder interest in Rain Kiosk;

e.    By breaching the fiduciary duty of loyalty of trust, loyalty and self-dealing that the officers and directors of 8 Speed 8 owed to 8 Speed 8 and, therefore, Vibe Micro through failing to ensure that the business opportunities that the officers and directors are pursing on behalf of Rain Kiosk and, upon information and belief, other third party entities were being pursued by 8 Speed 8;

f.    By performing an *end-run* around the automatic stay created by the Bad Faith Involuntary Bankruptcy Litigation initiated by SIG and Shabanets through the transfer of assets comprised of cash and intellectual property to Rain Kiosk and then utilizing all such assets on behalf of Rain Kiosk to create the types of business opportunities that the officers and directors of 8 Speed 8 should have been pursuing on behalf of 8 Speed 8;

g.    By the intentional destruction of 8 Speed 8 corporate documents during the Bad Faith Involuntary Bankruptcy Litigation;

h.    By failing to comply with The 8 Speed 8 Shareholder Agreement through ensuring that the officers and directors would inform Vibe Micro of the proposed transaction to Payteller and provide Vibe Micro with the right of first refusal as per Article 16 of The 8 Speed 8 Shareholder Agreement to purchase the corporate assets within the timeframe specified by such provision;

i      By engaging in self-dealing and breaching their fiduciary duty of loyalty, trust and repose by using the bad faith Bad Faith Involuntary Bankruptcy Litigation to participate in a securities offering and enabling one director of 8 Speed 8 to receive stock in Payteller in consideration for the 8 Speed 8 corporate insiders finding a Russian investment company to provide a 25 million dollar funding commitment to Payteller;

j.     By engaging in self-dealing and breaching their fiduciary duty of loyalty, trust and repose by using the bad faith Bad Faith Involuntary Bankruptcy Litigation of closing on the Payteller Transaction and receiving stock and reimbursement of the monies from the bridge loan provided by the 8 Speed 8 corporate insiders to Payteller through the utilization of shell companies without either requesting or obtaining stay relief during the Bad Faith Involuntary Bankruptcy Litigation;

k.     By taking any and all other action that constitutes a breach of the officers and directors of 8 Speed 8 fiduciary duty of loyalty, trust and repose that the officers and directors of 8 Speed 8 owed to 8 Speed 8 and, therefore, Vibe Micro.

57.    The correspondence from Dexter W. Lehtinen, counsel for Vibe Micro, dated November 25, 2013 provides, in part, as follows:

"Should you. . . ..**continue to deprive my clients of their rights and interests in, and access to 8 Speed 8**, please be advised that we will immediately commence legal action for injunctive relief and/or damages, and to enforce any rulings of Mr. Saad [the arbitrator] as applicable, including with the assistance of Las Vegas counsel. Nothing contained in this communication is intended to obligate or offer forbearance from commencing legal action by my clients, who reserve the right to commence legal action immediately."

"In addition to the preceding, we have not overlooked—and, indeed, the **Notice is utterly transparent—that each of you, and together, have engaged in an unlawful scheme to deprive my clients of their rights and interests in 8 Speed 8, and to convert them for yourselves**. The records of your dealings with each other, including documents, emails and other communications, together with the Notice, abundantly demonstrate this**. In sum, you cannot get rid of the rights, interests and holdings of shareholders, directors and offices at your pleasure, without due process, and, as applicable, without proper compensation.[33]   Please be advised that we intend to prosecute against any continuation of this scheme insofar as it deprives my clients of their rights, interest or holdings in 8 Speed 8 or as it abuses or violates corporate or commercial procedure or regulation or judicial process."**

---

[33] Bold font added for additional emphasis.

58.     Such correspondence clearly demonstrates Edward Mandel and Vibe Micro's extensive efforts to made by Edward Mandel and Vibe Micro to obtain the action that they desired from the officers and directors of 8 Speed 8.  In response to this correspondence, the officers and directors of 8 Speed 8 attempted to sabotage and loot it and used the automatic stay created by the Bad Faith Involuntary Bankruptcy Litigation to shield if from prosecution in the arbitration action. The discovery and record evidence received during the Bad Faith Involuntary Bankruptcy Litigation  and through other proceedings demonstrates that any further efforts to demand 8 Speed 8, through its officers and directors, would have been futile as the majority officers and directors did what Vibe Micro's demand letter told them not to do—squeeze out any beneficial interest that Vibe Micro and, thus, Edward Mandel, had in the assets and the going concern of 8 Speed 8 by looting, bankrupting and stripping it of its assets after it received the demand from Mr. Lehtinen, on behalf of Vibe Micro.

59.     Vibe Micro is the only shareholder that was victimized by such conduct as the other shareholders and officers and directors directly participated in it.   Therefore, Vibe Micro's complaint does fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the rights of 8 Speed 8.

**WHEREFORE,** Vibe Micro, on behalf of 8 Speed 8, demands the entry of a judgment against the 8 Speed 8 corporate insiders and Parker for their conduct of breaching the fiduciary duty of loyalty, trust and repose that they owed to 8 Speed 8 and further demands any further relief that the Court deems fair, just and equitable.

**COUNT II—CIVIL CONSPIRACY (VIBE MICRO DERIVATIVELY ON BEHALF OF 8 SPEED 8 AGAINST THE 8 SPEED 8 CORPORATE INSIDERS AND PARKER AS PER RULE 23.1 OF THE NEVADA RULES OF CIVIL PROCEDURE)**

60.    Vibe Micro readopts and reincorporates the allegations contained in Paragraphs 1 through 53; and Paragraphs 56 through 59, inclusive, as if specifically incorporated herein.

61.    Vibe Micro, as minority shareholder of 8 Speed 8, brings its verified action sounding in civil conspiracy against The 8 Speed 8 corporate insiders and Parker as per Rule 23.1 of the Nevada Rules of Civil Procedure.[34]

62.    The 8 Speed corporate insiders and Parker conspired between and amongst themselves to engage in the breaches of fiduciary duties that they each owed to 8 Speed 8 through unlawful means; the result of which caused damages to 8 Speed 8 and, derivatively, Vibe Micro.

**WHEREFORE,** Vibe Micro demand the entry of a judgment on behalf of 8 Speed 8 against the 8 Speed 8 corporate insiders and Parker for conspiring with one another to breach the fiduciary duty of loyalty, trust and repose that the 8 Speed 8 corporate insiders owed to 8 Speed 8 and further demands any further relief that the Court deems fair, just and equitable.

## COUNT III—VIOLATION OF 18 U.S.C.A. § 1962—RACKETEERING INFLUENCED AND CORRUPT ORGANIZATIONS (RICO) (EDWARD MANDEL AND VIBE MICRO DERIVATIVELY ON BEHALF OF 8 SPEED 8 AS PER RULE 23.1 OF THE NEVADA RULES OF CIVIL PROCEDURE AGAINST THE 8 SPEED 8 CORPORATE INSIDERS AND THE PAYTELLER DEFENDANTS)

63.    Edward Mandel and Vibe Micro readopts and reincorporates the allegations contained in Paragraphs 1 through 53; Paragraphs 56 through 59; and Paragraph 62, inclusive, as if specifically incorporated herein.

64.    Edward Mandel and Vibe Micro brings a direct and derivative claim, respectively, on behalf of 8 Speed 8 sounding in a violation of the Federal Racketeer Influenced and Corrupt Organizations Act (RICO); or 18 U.S.C.A. §1961 against The 8 Speed 8 corporate insiders and the Payteller Defendants.

---

[34] Vibe Micro has filed its claim against the majority corporate shareholders, or Luxor and SIG, in arbitration.

65.     The 8 Speed 8 corporate insiders and the Payteller Defendants engaged in racketeering activity[35] by doing, without limitation, the following (collectively "The Predicate Acts") within a ten year time span:

(i)     The act or threat involving the murder of Edward Mandel for contesting the conduct in the 8 Speed 8 Transaction;[36]

(ii)    The act or threat involving the extortion of Edward Mandel through causing Edward Mandel to be incarcerated in the Southern District of Florida in order to ensure that Edward Mandel would not participate in the special meeting for 8 Speed 8;[37]

(iii)   The filing of the Bad Faith Involuntary Bankruptcy Litigation[38] through agreeing between themselves to have SIG and Shabanets initiate a bankruptcy as to 8 Speed 8 in order to (a) avoid the demand for arbitration initiated by Vibe Micro; (b) *get Ed out of the picture*; (c) attempt to transfer hundreds of thousands of dollars of corporate assets from 8 Speed 8 and into Rain Kiosk; and (d) to permit SIG and Shabanets to get their money back from the capital contribution provided to 8 Speed 8 as per The 8 Speed 8 Shareholder Agreement;

(iv)    The utilization of "Insiders," as defined by the Bankruptcy Code[39] to engage in a Preferential Transaction[40] of issuing 25 million dollars of funding from one director of 8 Speed 8 to a competitor of 8 Speed 8, or Payteller (who had employed a second director of 8 Speed 8), while 8 Speed 8 was in the middle of the Bad Faith Involuntary Bankruptcy Litigation[41] without

---

[35] See 18 USCA §1961(1)
[36] See 18 USCA 1961(1)(A)
[37] See 18 USCA 1961(1)(A)
[38] See 18 USCA §1961(1)(D)—any offense involving fraud connected with a case under title 11. . . .
[39] See 11 U.S.C. §101(31)(B) (i – vi).
[40] As defined by 11 U.S.C. §547.
[41] See 11 U.S.C. 547(b)(3)

moving for relief of the automatic stay created by the Bad Faith Involuntary Bankruptcy Litigation.[42]

      (v)    By violating 18 U.S.C. §152, United States Code, by doing the following: (a) by knowingly and fraudulently concealing from a custodian, trustee, marshal or other officer of the court charged with the control or custody of property or, in connection with a case under title 11, from creditors of the United States Trustee, any property belonging to the estate of a debtor through the intentional destruction of 8 Speed 8 corporate documents and the abject failure to disclose hundreds of thousands of dollars in assets comprising of intellectual property, cash, and clientele of 8 Speed 8 during the Bad Faith Involuntary Bankruptcy Litigation; (b) by the 8 Speed 8 corporate insiders' knowingly and fraudulently giving, offering, receiving or attempting to receive money or property, remuneration, compensation, reward, advantage or promise thereof from the Payteller Defendants in consideration for the 8 Speed 8 procuring The Illegal Payteller Transaction; and (c) by knowingly or fraudulently transferring or concealing any of the 8 Speed 8 corporate insiders' property and/or the property of ISS Management in order to proceed with the negotiations and closing of the Illegal Payteller Transaction;

      (vi)    The use of the mail or wire transmission[43] to transfer monies described as a bridge loan to Payteller prior to the closing of the Illegal Payteller Transaction;

      (vii)    The receiving of "proceeds" comprised of money or property in the form of cash, shares of stock, or other valuable consideration from the Illegal Payteller Transaction in direct violation of 18 U.S.C.A §1957 without obtaining stay relief and without disclosure to the trustee; and

---

[42] See 11 U.S.C. §362
[43] See 18 USCA 1961(1)(B)—any act which is indictable under any of the following provisions of title 18, United States Code, Section 1341 (relating to mail fraud) and Section 1343 (relating to wire fraud)

(viii)   The traveling or using the mail or any facility in interstate commerce with the intent to distribute the proceeds comprised of money or property in the form of cash, shares of stock or other valuable consideration from the criminally derived property of the 25 million dollar transfer from one corporate insider of 8 Speed 8 (Parker) to a second corporate insider of 8 Speed 8 (Guarino) through the 8 Speed 8 corporate insiders flipping Payteller stock for inflated prices based on fraudulent valuations of Payteller in direct violation of 18 U.S.C.A. §1957; all of which is in direct violation of 18 U.S.C.A. §1952(b)(3).

66.     The Predicate Acts were related to one another and otherwise form a pattern of conduct as the Predicate Acts demonstrate a collective scheme that have the same or similar purposes results, participants, victims or methods of commission and are otherwise interrelated with the common thread to all of it being to "*get Ed out of the picture*" through the filing of the Bad Faith Involuntary Bankruptcy Petition and to ensure that SIG and Shabants recovers the money and capital contributions that were invested into 8 Speed 8 through the utilization of one corporate insider of the debtor, or Parker, to transfer 25 million dollars and intellectual property and other assets from 8 Speed 8 to a second corporate insider of the debtor, or Guarino (through Payteller) without seeking stay relief and during the preferential transfer of assets period as per 11 U.S.C. §547.

67.     The Predicate Acts demonstrate criminal conduct of a continuing nature as the Predicate Acts collectively demonstrate that The 8 Speed 8 corporate insiders and the Payteller Defendants have received and continue to enjoy the custodianship of the proceeds of the Illegal Payteller Transaction comprised of their interest in the stock, assets and cash from Payteller. Payteller is a Florida corporation and is currently and actively doing business in the State of Florida

in the jurisdiction of the Southern District of Florida; evidencing the ongoing nature of the criminal activity.

68.     The 8 Speed 8 corporate insiders and the Payteller Defendants established a RICO Enterprise including an association in fact enterprise by creating a series of corporate documents and shell entities that were managed, on paper, by others, and were assisted by business associates and their respective counsel.  All such property was owned by the Payteller Defendants and the 8 Speed 8 Defendants in order to shield the Illegal Payteller Transaction from the bankruptcy estate and, therefore, provide the 8 Speed 8 corporate insiders kickbacks in consideration for providing Payteller with the 25 million dollar funding commitment.

69.     Edward Mandel has standing to pursue a claim based on the predicate acts of the threat of murder and the threat of extortion through the wrongful incarceration that were directed to Edward Mandel.  While Vibe Micro is the shareholder of 8 Speed 8, Edward Mandel is the controlling person on its behalf.  The 8 Speed 8 corporate insiders knew this to be the case and they knew that if their threating of murder and extortion through the wrongful incarceration was successful, that Vibe Micro would be powerless to prevent the 8 Speed 8 corporate insiders from achieving their desired result of sabotaging 8 Speed 8, getting Edward Mandel out of the picture and thereafter transferring assets from 8 Speed 8 during the Bad Faith Involuntary Bankruptcy Litigation to, first, Rain Kiosk and, later, Payteller.  Vibe Micro is a shareholder of 8 Speed 8 and, therefore, has standing to pursue a claim on its behalf because the racketeering acts engaged in by the 8 Speed 8 corporate insiders and the Payteller Defendants of filing the Bad Faith Involuntary Bankruptcy Litigation and thereafter engaging in additional predicate acts of wiring money to

Payteller and receiving stock and cash as a result of brokering this transaction was activity that was intended to harm 8 Speed 8.[44]

70.      As a direct and proximate result of the 8 Speed 8 corporate insiders and the Payteller Defendants engaging in the Predicate Acts, The RICO Defendants are subject to criminal penalties as per 18 U.S.C.A.§ 1963, including imprisonment of not more than 20 years and forfeiture of the illegally transferred assets.

71.      Edward Mandel, directly, and Vibe Micro, derivatively on behalf of 8 Speed 8, incurred direct injuries as a result of The RICO Defendants violation of The Predicate Acts. Therefore, Edward Mandel, directly, and Vibe Micro, derivatively on behalf of 8 Speed 8, are entitled to the following remedies:

a.      Civil penalties as per 18 U.S.C.A. §1964 including the ordering of The 8 Speed 8 Defendants and the Payteller Defendants to divest themselves of any interest, either directly or indirectly, in any enterprise imposing reasonable restrictions on the future activities or investments of any person, including, but not limited to prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in, the activities which affect interstate or foreign commerce or the ordering of the dissolution or reorganization of the corporate entities involved in The Predicate Acts, making due provisions for the right of innocent persons; and

b.      Threefold the damages sustained by Edward Mandel, directly and Vibe Micro, derivatively on behalf of 8 Speed 8, or 75 million dollars and the cost of suit, including a reasonable attorneys' fee.

---

[44] *See In re American Express Co. Shareholder Litigation,* 39 F.3d 395, 400–01 (2d Cir.1994) (holding that in determining whether plaintiff in shareholder derivative action has **RICO** standing, courts must look to whether alleged activity was intended to harm corporation).

**WHEREFORE,** Edward Mandel, directly, and Vibe Micro, derivatively on behalf of 8 Speed 8, demand the entry of a judgment against the 8 Speed 8 corporate insiders and the Payteller Defendants for violations of The Predicate Acts of a continuous nature and demands civil remedies amounting to three times the actual damages sustained, or 75 million dollars, and further demands reasonable attorneys' fees, costs and expenses and any additional relief that the Court deems fair, just and equitable.

### COUNT IV—AIDING AND ABETTING THE VIOLATION OF 18 U.S.C.A. § 1962— RACKETEERING INFLUENCED AND CORRUPT ORGANIZATIONS (RICO) (VIBE MICRO DERIVATIVELY ON BEHALF OF 8 SPEED 8 AS PER RULE 23.1 OF THE NEVADA RULES OF CIVIL PROCEDURE AGAINST THE LAW FIRM)

72.     Vibe Micro readopts and reincorporates the allegations contained in Paragraphs 1 through 53; Paragraphs 56 through 59; Paragraph 62; and Paragraphs 65 through 71, inclusive, as if specifically incorporated herein.

73.     Vibe Micro and Edward Mandel brings a derivative claim on behalf of 8 Speed 8 against Law Firm for the Law Firm's conduct of aiding and abetting the RICO Enterprise engaged in by The 8 Speed 8 corporate insiders and the Payteller Defendants.[45]

74.     The Law Firm actively aided and abetted the following predicate acts engaged in by the 8 Speed 8 corporate insiders and the Payteller Defendants:

(i)     By assisting the 8 Speed 8 corporate insiders, as defined by the Bankruptcy Code[46] to engage in a Preferential Transaction[47] of illegal brokering a 25 million dollar funding commitment from one director of 8 Speed 8 to a competitor of 8 Speed 8, or Payteller (who had employed a second director of 8 Speed 8), while 8 Speed 8 was in the middle of the Bad Faith

---

[45] *See, e.g., Petro-Tech, Inc. vs. Western Co. of North America,* 824 F.2d 1349, 1356 (3d Cir. 1987).
[46] See 11 U.S.C. §101(31)(B) (i – vi).
[47] As defined by 11 U.S.C. §547.

Involuntary Bankruptcy Litigation[48] and ensure that the 8 Speed 8 corporate insiders received stock from Payteller in consideration for such transaction without moving for relief of the automatic stay created by the Bad Faith Involuntary Bankruptcy Litigation.[49]  Law Firm provided this assistance only after (i) the 8 Speed 8 corporate insiders had actual knowledge that SIG Capital's motion to dismiss the Bad faith Involuntary Bankruptcy Litigation was being viewed by the Bankruptcy Court as a potential bad faith bankruptcy filing and after (ii) the 8 Speed 8 corporate insiders received a letter from Payteller Attorney that its deadline to provide the funding commitment as per the terms of the Letter of Understanding had expired and, unless the 8 Speed 8 corporate insiders were ready to commit to such funding, that Payteller would be seeking a funding commitment from other, third party sources.

        (ii)    By assisting the 8 Speed 8 corporate insiders in their conduct of violating 18 U.S.C. §152, United States Code, by doing the following: (a) assisting in the fraudulent concealment from the custodian, trustee, marshal or other officer of the court charged with the control or custody of property or, in connection with a case under title 11, from creditors of the United States Trustee, any property belonging to the estate of a debtor through the abject failure to disclose assets that the 8 Speed 8 corporate insiders had received during the Bad Faith Involuntary Bankruptcy in order to proceed with the funding that was ultimately provided to Payteller; (b) assisting the 8 Speed 8 corporate insiders' knowingly and fraudulently giving, offering, receiving or attempting to receive money or property, remuneration, compensation, reward, advantage or promise thereof from the Payteller Defendants in consideration for the 8 Speed 8 procuring the Illegal Payteller Transaction; and by (c) by knowingly or fraudulently assisting the 8 Speed 8 corporate insiders in transferring or concealing any of the 8 Speed 8

---

[48] See 11 U.S.C. 547(b)(3)
[49] See 11 U.S.C. §362

corporate insiders' property and/or the property of ISS Management in order to proceed with the negotiations and closing of the Illegal Payteller Transaction while the 8 Speed 8 corporate insiders were in the middle of the Bad Faith Involuntary Bankruptcy Litigation.

        (iii)    By assisting the 8 Speed 8 corporate insiders in receiving the money, shares of stock or other valuable consideration from the Illegal Payteller Transaction in direct violation in direct violation of 18 U.S.C.A §1957 without obtaining stay relief and without disclosure to the trustee.

        (iv)    By assisting the continuation of the RICO Enterprise through the creation of corporate entities to shield the fact that the 8 Speed 8 corporate insiders were flipping their illegally acquired Payteller stock at inflated prices based on fraudulent valuations of Payteller without disclosing any such information to the bankruptcy court.

        75.    Law Firm had actual knowledge of the egregious bankruptcy fraud being committed by the 8 Speed 8 corporate insiders at the time that the Law Firm aided and abetted the 8 Speed 8 corporate insiders in engaging in the predicate acts.  Its actual knowledge was based on a hearing transcript by the Court that continued SIG Capital's motion to dismiss to consider in August, 2014 whether the bankruptcy filing was in bad faith.  Its actual knowledge is further based on the record evidence from the Bad Faith Involuntary Bankruptcy Litigation that (i) 8 Speed 8 had hundreds of thousands of dollars in assets at the time of the filing; (ii) such action was filed to get Ed out of the picture; (iii) it was filed to avoid the arbitration demand; and (iv) it was filed for SIG Capital and Shabanets to get their money back from the capital contribution of 8 Speed 8.

        76.    Law Firm was generally aware of all such information at the time that they aided and abetted the 8 Speed 8 corporate insiders to close on the Illegal Payteller Transaction yet

knowingly and substantially assisted the RICO Enterprise through the 8 Speed 8 corporate insiders

engaging in all such predicate acts.

77.     As a direct and proximate result of such conduct, 8 Speed 8 and, derivatively, Vibe

Micro incurred damages.

**WHEREFORE,** Vibe Micro, derivatively on behalf of 8 Speed 8, demand the entry of a

judgment against the Law Firm for its conduct of aiding and abetting the RICO Enterprise engaged

in by the 8 Speed 8 corporate insiders and the Payteller Defendants and further demands any further

relief that the Court deems fair, just and equitable.

### COUNT V—CONSPIRACY TO VIOLATE 18 U.S.C.A. § 1962(d)—RACKETEERING INFLUENCED AND CORRUPT ORGANIZATIONS (RICO) (VIBE MICRO DERIVATIVELY ON BEHALF OF 8 SPEED 8 AS PER RULE 23.1 OF THE NEVADA RULES OF CIVIL PROCEDURE AGAINST THE RICO CONSPIRATOR DEFENDANTS)

78.     Vibe Micro readopts and reincorporates the allegations contained in Paragraphs 1

through 53; Paragraphs 56 through 59; Paragraph 62; Paragraphs 65 through 71; and Paragraphs

73 through 77, inclusive, as if specifically incorporated herein.

79.     Vibe Micro brings a derivative claim on behalf of 8 Speed 8 against (i) the 8 Speed

8 corporate insiders; (ii) the Payteller Defendants; (iii) Parker; (iv) ISS Management; (v) TBP

Management; (vi) Card Platforms; (vii) Kiosk Consulting; (viii) Law Firm; (ix) Payteller

Compliance; (x) Big Capital; (xi) Payteller Attorney; (xii) Park Law Firm; and (xiii) D2P Ventures

(collectively "The RICO Conspirators").

80.     18 USCA §1962(d) provides that it is unlawful for any person to conspire to violate

any of the provisions of §1962(a), (b), or (c).

81.     The RICO Conspirators conspired to violate 18 USCA §1962 through creating an

enterprise designed to create a series of transactional and corporate documents designed to insulate

the 8 Speed 8 corporate insiders and the Payteller Defendants from being exposed for engaging in the predicate acts sounding in (i) bankruptcy fraud; (ii) receiving money or property during the bankruptcy fraud; (iii) transferring the money or property that was received by Payteller to other corporations for little or no consideration; and (iv) enrich the Payteller Defendants and the 8 Speed 8 corporate insiders for doing so through money, stock and other valuable consideration.

82.     Such conduct was designed to unjustly enrich the 8 Speed 8 corporate insiders, the Payteller Defendants and the Law Firm.  All such corporate entities are either owned or managed by the 8 Speed 8 corporate insiders and/or the Payteller Defendants.

83.     As a direct and proximate result of such conduct, 8 Speed 8 and, therefore, Vibe Micro incurred damages.  The damages are as follows:

a.      Civil penalties as per 18 U.S.C.A. §1964 including the ordering of the RICO Conspirators to divest themselves of any interest, either directly or indirectly, in any enterprise imposing reasonable restrictions on the future activities or investments of any person, including, but not limited to prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in, the activities which affect interstate or foreign commerce or the ordering of the dissolution or reorganization of the corporate entities involved in The Predicate Acts, making due provisions for the right of innocent persons; and

b.      Threefold the damages sustained by Vibe Micro, derivatively on behalf of 8 Speed 8, or 75 million dollars and the cost of suit, including a reasonable attorneys' fee.

**WHEREFORE,** Vibe Micro, derivatively on behalf of 8 Speed 8, demand the entry of a judgment against the RICO Conspirators for conspiring together to violate the predicate acts sounding in bankruptcy fraud, wire fraud, and the use of the illegal proceeds for their own unjust enrichment and demands civil remedies amounting to three times the actual damages sustained, or

75 million dollars, and further demands reasonable attorneys' fees, costs and expenses and any additional relief that the Court deems fair, just and equitable.

### COUNT VI--COMPLAINT FOR TEMPORARY INJUNCTIVE RELIEF
### (VIBE MICRO AGAINST THE RICO CONSPIRATORS)

84.     Vibe Micro readopts and reincorporates the allegations contained in Paragraphs 1 through 53; Paragraphs 56 through 59; Paragraph 62; Paragraphs 65 through 71; Paragraphs 73 through 77; and Paragraphs 81 through 83, inclusive, as if specifically incorporated herein.

85.     Vibe Micro brings an action for temporary injunctive relief against The RICO Conspirators.

86.     The 8 Speed 8 corporate insiders were aware of close to Three Hundred Thousand Dollars of assets at the time that SIG Capital filed its Bad Faith Involuntary Bankruptcy Litigation. Such assets are comprised of intellectual property, customers, kiosks, marketing strategies. The 8 Speed 8 corporate insiders sabotaged the business through the filing of the Bad Faith Involuntary Bankruptcy Litigation and renders Vibe Micro's interest in the kiosk business as a nullity as a result of this conduct.

87.     Vibe Micro will suffer irreparable injury if the injunction is not issued as the failure to issue an injunction will permit The RICO Defendants to be able to conduct their daily operations with money that was received by the Payteller Defendants during the Bad Faith Involuntary Bankruptcy Litigation. The RICO statute contemplates the prohibition from engaging in future behavior of this sort; the injunction is necessary for such purpose.

88.     The threatened injury outweighs the potential harm in the issuance of the injunctive relief. The RICO Defendants have continued to operate an Enterprise through the statutory predicate acts and only a court ordered injunction demanding the ceasing and desisting from all further conduct from the RICO Defendants will prohibit such conduct. In addition, the Payteller

Defendants are actively using the illegal money that they received from the third party Russian investors to use the interstate commerce to establish Payment Terminals in the State of Colorado for the Marijuana business and, therefore, promoting facially illegal conduct.

89.    The issuance of such injunction, if issued, would not be adverse to the public interest.  The public has an interest in ensuring the sanctity of corporate duties and to protect against bankruptcy fraud and other predicate acts giving rise to RICO.

90.    Unless the Court enters a temporary restraining order, The 8 Speed 8 Defendants will receive notice of the pending Second Amended Complaint and very well may cause further transfers of the assets that are separate and apart from the ones with Rain Kiosk and Payteller.

**WHEREFORE**, Vibe Micro requests the entry of an order granting its request for temporary injunctive relief against The 8 Speed 8 Defendants and further would request any further relief that the Court deems fair, just and equitable.

Dated this 20th day of July, 2015.

Respectfully submitted,

THE    LAW    OFFICES    OF
GEOFFREY D. ITTLEMAN, P.A.
110 SE 6th Street, Suite 2300
Fort Lauderdale, Florida 33301
Tel: (954) 462-8340
Fax: (954) 462-8342
geoffrey@ittlemanlaw.com

By:    /s/ *Geoffrey Ittleman*
Geoffrey D. Ittleman, Esq.
Fla. Bar No.: 377790